* * * * * * * * * * *
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Houser and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties. The Full Commission adopts the Opinion and Award of Deputy Commissioner Houser with minor modifications.
 * * * * * * * * * * *
The Full Commission finds as a fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. Plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer by way of a motor vehicle accident on 4 March 2006. *Page 2 
2. Plaintiff's average weekly wage and corresponding compensation rate are in dispute.
3. Due to confusion caused by the manner in which exhibits had been marked prior to the hearing, a new and comprehensive paginated packet of exhibits was submitted subsequent to the hearing before the deputy commissioner is admitted into the record, marked as Stipulated Exhibit (1) and includes the following:
 a. A Prehearing/Pre-Trial Agreement (5 pages);
 b. Exhibits Attached to the Prehearing Agreement (564 pages); (NOTE: The "Exhibits Attached to the Prehearing Agreement" was supplemented after the comprehensive paginated packet of exhibits was submitted and admitted into the record by Order filed on 17 June 2008. That Order, a signed proposed Order submitted by plaintiff, indicates that with the supplemental documents, the "Exhibits Attached to the Prehearing Agreement would have 601 pages. However, the supplemental documents brought the page total to 564.)
 c. North Carolina Department of Transportation Job Description (7 pages);
 d. Earnings Report for Plaintiff (2 pages);
 e. Indemnity Payouts (Medical Cost Summary) (2 pages);
 f. Defendants' Response to Plaintiff's Motion to Compel Emergency Medical Treatment and Production of Documents and Extended Time to Answer Interrogatories (6 pages); *Page 3 
 g. Letters Addressed to Jerald Welch dates 8 December 2006, 14 December 2006, 5 March 2007, 6 March 2007 and 25 January 2007 and letter addressed to Daniel B. Eller dated 14 June 2007 (14 pages);
 h. Defendants' Response to Plaintiff's First Set of Interrogatories (17 pages), and;
 i. Plaintiff's Response to Defendants' First Set of Interrogatories (141 pages).
 * * * * * * * * * * *
Based upon all the competent evidence from the record, the Full Commission finds as follows:
 FINDINGS OF FACT
1. On all relevant dates, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. The Industrial Commission has jurisdiction of the parties and subject matter of this claim.
3. As of the hearing date before the deputy commissioner, plaintiff was fifty (50) years of age with his date of birth being 6 September 1956. Plaintiff is from Ukraine, has lived in the United States for eighteen (18) years, and became a United States Citizen six years ago. Plaintiff's native language is Ukranian, but he does speak English. 4. After immigrating to the United States, plaintiff first worked in various full-time and part-time jobs. After 1993, plaintiff worked for several trucking companies as a driver. 5. On 14 July 2004, plaintiff began working for defendant-employer as a driver. Defendant-employer is a transportation company that delivers new truck cabs. As a driver for *Page 4 
defendant-employer, plaintiff drove and delivered piggy-backed new truck cabs. At the delivery site, plaintiff would unhook the break hoses and light wires and move and reinstall axles using wheel blocks and an oil catch container. In performing his duties, plaintiff used a pneumatic or hand powered wrench to remove lug nuts and axle hub covers. Also as part of his duties, plaintiff would lower a cab to the ground using a crane or manually using a chain or electric hoist or a wrecker truck. Plaintiff then cleaned up the truck and traveled home or to defendant-employer's terminal. Plaintiff traveled to various destinations by means of employer-provided transportation, including air and ground transportation. Additionally, plaintiff maintained daily logs in compliance with federal regulations. The physical requirements of plaintiff's job included pulling and lifting up to one hundred and fifty (150) pounds.
6. On 31 March 2005, plaintiff was examined by John Levis, PA, for complaints of discomfort in his anterior chest, between his shoulders and in his right flank area. Plaintiff was diagnosed at that time with myalgia. On 7 April 2005, plaintiff returned to John Levis, PA with similar symptoms and was diagnosed as having a pulmonary nodule.
7. On 4 March 2006, plaintiff was a passenger in the front seat of a van provided by defendant-employer traveling from the Charlotte airport to defendant-employer's facility. The driver of the van fell asleep while traveling at approximately sixty-five miles per hour, resulting in the van running off the highway to the left, striking multiple trees in the median. At the time of the accident, plaintiff was wearing a seat belt and was holding a briefcase in his lap. Upon impact, plaintiff was thrown towards the dashboard and his briefcase was pushed up into his abdomen.
8. Following the accident, plaintiff was transported to the Lake Norman Regional Medical Center Emergency Room. X-rays revealed no fractures. Plaintiff was diagnosed as *Page 5 
having a contusion to his abdomen and a neck sprain or strain. Plaintiff was prescribed pain medications and discharged with the instruction to seek additional treatment if needed.
9. Later on 4 March 2006, plaintiff returned to the Lake Norman Regional Medical Center and reported experiencing increased pain in his abdomen, lightheadedness, and dizziness. After additional x-rays were taken, plaintiff was discharged, medically excused from work for one day and was assigned light duty work restrictions for the following four days.
10. On 6 March 2006, plaintiff went to defendant-employer's facility and completed an injury report documenting the injuries to his abdomen and neck. The Terminal Manager's Injury Report also noted numbness in plaintiff's left side, neck and stomach pain, and bruising.
11. Also on 6 March 2006, plaintiff sought additional treatment from John Levis, PA, who diagnosed plaintiff with a contusion to the lower abdomen and medically excused plaintiff from work through 9 March 2006. An abdominal CT scan on 15 March 2006 revealed no hydronephrosis (distension of the kidney), no collapsed lungs, and mild levescoliosis of the lumbar spine.
12. On 10 May 2006, plaintiff underwent an evaluation sought by defendants from Dr. Carl Foulks, a gastroenterologist. An upper endoscopy with biopsy showed a small hiatial hernia, mild gastritis, and a benign biopsy. Dr. Foulks opined that plaintiff's symptoms were the result of an abdominal wall strain. On 30 May 2006, plaintiff reported decreased abdominal pain to Dr. Foulks.
13. On 19 May 2006, plaintiff returned to John Levis, PA and reported experiencing pain in his back and under his left ribs as well as difficulty breathing. On 1 June 2006, reported to John Levis, PA that he was experiencing mid-right flank pain and had blood in his urine. *Page 6 
Thereafter, plaintiff was restricted to light duty work for one week. John Levis, PA later medically excused plaintiff from all work from 28 June 2006 through 6 July 2006.
14. On 5 September 2006, plaintiff again returned to John Levis, PA and reported right side chest pain and was again medically excused from all work.
15. On 4 October 2006, plaintiff was evaluated for abdominal pain by Dr. Susan Nikrooz, an internist and gastroenterologist. At that time, plaintiff reported experiencing right upper quadrant, abdominal, and right flank pain as well as back pain. Dr. Nikrooz prescribed Ultram and ordered a lumbar CT scan and a hepatic panel. Plaintiff's lumbar CT scan revealed multilevel small to modest sized annular bulges throughout his lumbar spine. Plaintiff's hepatic panel was within normal limits. On 25 October 2006, Dr. Nikrooz recommended an MRI of plaintiff's cervical and thoracic spine, referred him to an orthopedist due to the results of the CT scan.
16 On 6 November 2006, plaintiff underwent the recommended lumbar MRI, the results of which revealed disc bulges, especially at L3-4 and L4-5, as well as mild L3-4 and L4-5 disc dessication. There was also mild L1-2 disc degeneration.
17 On 27 November 2006, plaintiff underwent an Independent Medical Evaluation with Dr. David Dupuy, at which time he reported severe back and rib pain with associated swelling and tingling. Dr. Dupuy diagnosed plaintiff as having a cervical, lumbar, and thoracic sprain and released him at maximum medical improvement to return to work with no restrictions.
18. Thereafter, plaintiff reported to defendant-employer's administrative assistant, Ms. Melinda Melchor, who requested that plaintiff undergo a Department of Transportation (DOT) physical. Although plaintiff did not return to work at that time, defendants completed a Form 28, stating that he had returned to work and terminated his indemnity compensation as of *Page 7 
28 November 2007. When informed of the inaccurate report, the adjuster indicated that partial payment had been made and sent to plaintiff even though no payment was received.
19. Plaintiff then underwent a DOT physical, which included an optical screening, checking plaintiff's blood pressure, taking a urine specimen, and a hearing test. The DOT physician released plaintiff to return to work as of 29 November 2006 without having reviewed plaintiff's medical records.
20. Plaintiff then reported to defendant-employer's facility on 6 December 2006, but was unable to return to work due to the severity of his pain. Ms. Melchor sent a form to the Industrial Commission incorrectly indicating that plaintiff had returned to work as of that date. Ms. Melchor also sent the form to defendant-employer's payroll department, but no wages were paid to plaintiff for 6 December 2006.
21. On 7 December 2006, plaintiff was again medically excused from all work by John Levis, PA due to his ongoing right-sided low back and abdominal pain. Plaintiff's out-of-work status continued through 27 December 2006.
22. On 8 December 2006, plaintiff requested assistance from defendants for his ongoing pain and depression.
23. On 14 December 2006, plaintiff, through counsel, notified defendants of what he contended was a significant underpayment of indemnity compensation.
24. Dr. Nikrooz referred plaintiff to Dr. Mark C. Hines, a physiatrist, who examined him on 8 January 2007, at which time plaintiff reported experiencing neck, back, shoulder blade, and flank pain. Dr. Hines also noted that plaintiff was experiencing depression because of his pain. In reviewing plaintiff's lumbar CT scan, Dr. Hines noted a possible small broad-based annular disc bulge at L1-L2, a moderate-sized broad-based disc bulge at L3-L4 with mild facet *Page 8 
arthropathy, and a moderate-sized disc bulge at L4-L5 with a right posteriolateral disc protrustion with corresponding facet arthropathy. Ultimately, Dr. Hines diagnosed plaintiff as having L3-L4 and L4-L5 disc bulges and facet arthropathy with bilateral flank pain and left lower extremity radiculopathy/neuropathy. Dr. Hines also diagnosed cervical retrolordosis and possible cervical C5-C6 degenerative disc disease.
25. Based upon his diagnoses, Dr. Hines recommended an MRI of plaintiff's cervical and lumbosacral spine as well as upper and lower extremity EMG testing. Dr. Hines also recommended conservative treatment, including injections, nerve blocks, chiropractic care, physical therapy, laser treatments, and use of a TENS unit. Additionally, Dr. Hines prescribed Lyrica, Lidoderm patches, and Celebrex and medically excused plaintiff from all work pending the results of the MRI.
26. Plaintiff's cervical MRI showed a C4-C5 minimal disc bulge and a C5-C6 broad-based disc bulge asymmetrically towards the right causing some narrowing of the posterior dimension of the spinal canal. Plaintiff's second lumbar MRI, when compared to his first of December 2006, showed fatty changes at L1-L2 either consistent with spondylodiscitis or Andersson lesion, focal fatty marrow replacement toward the anterior aspects of T11-T12 and toward the inferior aspect of T12 and the superior aspect of L1, and similar changes at the superior corner of L4 and L5. There was also a high signal abnormality at T11, possibly suggestive of a non-displaced pedicle fracture at T11.
27. Following plaintiff's report of ongoing neck, mid back, low back, and left flank pain in late January 2007, Dr. Hines opined that his cervical pain was likely the result of a soft tissue injury and a bulging disc resulting from his motor vehicle accident. Dr. Hines recommended a CT scan and/or a bone scan of that area and referred plaintiff to Dr. Alden *Page 9 
Milam for a surgical consultation. Dr. Hines also opined that plaintiff's low back pain and fracture were related to the motor vehicle accident. Dr. Hines recommended a consultation with a rheumatologist and continued plaintiff's out-of-work status. Plaintiff requested authorization for these referrals on 25 January 2007.
28. On 23 February 2007, plaintiff returned to Dr. Hines and again reported experiencing severe upper and lower back pain and that he had not been evaluated by a rheumatologist or an orthopedist because Dr. Hines' recommendations had not been approved by defendants. Additionally, Dr. Hines extended plaintiff's out-of work status for ninety (90) days. With the exception of the initial evaluation, all of Dr. Hines' treatments were paid for by defendants.
29. On 1 March 2007, plaintiff was evaluated by Dr. Lawrence Dunn, psychiatrist, at which time plaintiff reported severe abdominal and back pain as well as multiple and severe depression related symptoms. Dr. Dunn diagnosed plaintiff as having a chronic pain syndrome resulting from injuries sustained in his 6 March 2006 motor vehicle accident and major depression due to his chronic pain and his work and financial status. Dr. Dunn prescribed several medications for plaintiff's pain and depressive symptoms.
30. On 7 March 2007, plaintiff moved for an Order to reinstate indemnity compensation. Thereafter, defendants informed the Commission that the indemnity compensation owed to plaintiff had been paid although several periods remained unpaid until the day before the hearing in July 2007. Based upon defendants' assertions in this regard, the Executive Secretary's office issued an Order on 18 April 2007 rendering the motion moot and ordering late payment penalties. *Page 10 
31. Plaintiff then moved to vacate the Order of 18 April 2007. In their response, defendants represented that plaintiff had returned to work and submitted the inaccurate 6 December 2006 return to work report. The executive Secretary then filed an Order on 11 May 2007 vacating the 18 April 2007 Order and compelling the payment of benefits and a ten percent (10%) penalty. When payments were still not received pursuant to the Order, plaintiff filed for an expedited hearing.
32. On 14 June 2007, following repeated requests for production of documents from defendants, plaintiff moved to compel the production of documents. At that time, defendants had produced an Industrial Commission Form 22 Wage Chart with no dates marked, no payroll records, no attendance records, and no personnel records. In their response, defendants contended that they had produced the documents requested by plaintiff on 13 March 2007 and on the date of their response, 29 June 2007. Plaintiff replied noting that pages had been removed from the fax sent to counsel for plaintiff counsel and replaced with other records. The replaced pages were attached to defendants' 29 June 2007 response to the undersigned. Therefore, defendants' representation that the requested documents had been sent to counsel for plaintiff was false.
33. On 2 July 2007, plaintiff returned to Dr. Dunn with continued pain and severe symptoms of depression, including suicidal ideations. As of that date, the medications previously prescribed by Dr. Dunn had not been approved by defendants.
34. On 27 July 2007, plaintiff again returned to Dr. Hines and reported experiencing posterior cervical pain, left upper extremity neuropathic sensation in his left hand, bilateral thoracic pain, bilateral posterior shoulder pain, and low back pain. After examining plaintiff, Dr. *Page 11 
Hines concluded that the T11 pedicle fracture and C4-C5 and C5-C6 disc bulges were related to his 6 March 2006 motor vehicle accident. Dr. Hines continued plaintiff's out of work status.
35. On 6 September 2007, upon the referral of Dr. Hines, plaintiff was examined by Dr. Alden Milam. Dr. Milam diagnosed a right subacromial impingement syndrome and ordered a thoracic spine MRI. Dr. Milam also recommended that plaintiff remain out of work until the MRI was completed and recommended that plaintiff be evaluated by a rheumatologist.
36. Plaintiff's thoracic spine MRI revealed extensive areas of abnormal signal in the anterior and posterior elements of the thoracic spine. Dr. Milam opined that plaintiff could return to work given that there were not structural problems with his spine, but also believed he should be referred to an oncologist due to the abnormal signal within his bone marrow.
37. On 18 October 2007, Dr. Hines continued plaintiff's out of work status until he was could be evaluated by an oncologist and a rheumatologist.
38. On 14 November 2007, plaintiff was examined by Dr. O. Del Curling, a neurosurgeon, at which time he reported experiencing neck, right shoulder, and arm pain as well as thoracic back and chest pain. Dr. Curling diagnosed plaintiff as having had an acute disc herniation at C5-C6 with cervical radiculopathy. Dr. Curling also concluded that plaintiff did not have a T11 pedicle fracture.
39. On 21 November 2007, plaintiff was examined by Dr. William Mitchell with Piedmont Oncology Specialists. After an initial evaluation of plaintiff, Dr. Mitchell recommended a more thorough examination to rule out metastatic cancers and suggested obtaining a serum protein electrophoresis and a PSA test and CT scan of the chest, abdomen and pelvis. *Page 12 
40. On 26 March 2008, plaintiff reported to Dr. Hines that he was experiencing chronic pain and depression as well as numbness, weakness, and tingling, especially tingling of the first four fingers of his left hand.
41. On 24 April 2008, plaintiff reported to Dr. Dunn that he continued to experience severe pain, depression, and suicidal thoughts for which Dr. Dunn prescribed additional medications.
42. On 28 April 2008, plaintiff reported to Dr. Hines that due to his financial situation, he was unable to obtain the recommended additional oncology diagnostic studies.
43. Defendants have denied plaintiff's medical treatment with Dr. Dunn and Dr. Dunn's recommended evaluations by an oncologist and a rheumatologist.
44. Since 4 March 2006, plaintiff has attempted to return to work with defendant-employer on three occasions. The first was on or about 27 March 2006. The second was in June 2006 and the third was July 2006. On each of these occasions, plaintiff was unable to perform his job duties due to increased pain. Following September 2006, plaintiff has not returned to work for defendant-employer and his employment has now been terminated.
45. Dr. Dunn has diagnosed plaintiff as having chronic pain syndrome and a chronic, severe major depressive disorder without psychotic features. Further, Dr. Dunn has opined that plaintiff's depression and chronic pain syndrome were caused by his 4 March 2006 injury by accident. Dr. Dunn has recommended that plaintiff take medication and that plaintiff has weekly psychotherapy, physical therapy, and massage therapy.
46. As for plaintiff's ability to work and earn wages, Dr. Dunn has opined that since 1 March 2007, plaintiff has been unable to work in any capacity due to his depression and chronic pain syndrome. *Page 13 
47. Dr. Hines has opined that plaintiff's cervical condition and depression were caused by his 4 March 2006 injury by accident. Dr. Hines further opined that plaintiff's abdominal and flank symptoms were aggravated and could have been caused his 4 March 2006 injury by accident and that the aggravation would have been significant. Dr. Hines has also opined that plaintiff's and his lumbar and thoracic conditions were aggravated by his 4 March 2006 injury by accident and that this aggravation was significant. Finally, Dr. Hines has opined that plaintiff's 4 March 2006 injury by accident significantly contributed to his chronic pain condition and that this contribution was significant.
48. According to Dr. Hines, plaintiff has not reached maximum medical improvement and is unable to work in his previous employment or in any other employment due to his 4 March 2006 injury by accident and related conditions.
49. Dr. Curling has opined that plaintiff's neck, right arm, and right shoulder symptoms were caused by his 4 March 2006 injury by accident. Without rheumatology and hematology/oncology evaluations, Dr. Curling was unable to render an opinion on the causation of plaintiff's thoracic and chest complaints.
50. Dr. Curling further opined that plaintiff had not reached maximum medical improvement and that plaintiff could physically function in a sedentary capacity, lifting ten pounds occasionally with avoidance of overhead or repetitive upper body work. 51. The opinions of Dr. Hines, Dr. Curling, and Dr. Dunn regarding diagnosis, causation, medical treatment, and plaintiff's ability to work are given greater weight than those of Dr. Dupuy and Dr. Milam. Additionally, Dr. Dupuy's opinion that plaintiff reached maximum medical improvement as of 27 November 2006 is given no weight by the undersigned. *Page 14 
52. Plaintiff's cervical and abdominal problems, chronic pain syndrome, and depression are the direct and natural result of and causally related to his 4 March 2006 injury by accident.
53. The medical treatment provided and recommended by Dr. Hines, Dr. Curling, and Dr. Dunn regarding plaintiff's cervical and lumbar conditions was reasonable to effect a cure or provide relief. At the time of the hearing, plaintiff continued to experience severe pain and continued to need additional medical treatment.
54. Based upon the credible medical and vocational evidence of record, and as the result of the 4 March 2006 injury by accident, plaintiff was unable to earn any wages in his former position with defendant-employer or in any other employment for the period of September 2006 through the present and ongoing.
55. On all relevant dates, plaintiff's average weekly wage was $761.69, yielding a compensation rate of $507.79.
56. Defendants' actions in this matter constitute an unreasonable defense of this matter were based upon stubborn, unfounded litigiousness, thereby subjecting them to the imposition of sanctions.
57. Plaintiff has not pursued this matter unreasonably.
 * * * * * * * * * * *
Based on the foregoing findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On all relevant dates, plaintiff's correct average weekly wage was $761.69, yielding a compensation rate of $507.79. N.C. Gen. Stat. § 97-2(5). *Page 15 
3. For periods when plaintiff received total disability compensation prior to this Opinion and Award, he was paid $472.27 per week based upon an incorrect average weekly wage of $708.37. Id.; N.C. Gen. Stat. § 97-29.
4. On 4 March 2006, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer. N.C. Gen. Stat. § 97-2(6).
5. Plaintiff's cervical, abdominal, chronic pain syndrome, and depression are the direct and natural result of and causally related to his 4 March 2006 injury by accident. Id.
6. Based upon the credible medical and vocational evidence of record, as the result of his 4 March 2006 injury by accident, plaintiff is entitled to be paid by defendants ongoing total disability compensation at the rate of $507.79 per week for the period of September 2006 through the present and continuing until such time as he returns to work, or further Order of the Commission. N.C. Gen. Stat. § 97-29.
7. For the periods plaintiff received total disability compensation prior to this Opinion and Award, he is entitled to the difference between what he was paid, $472.27 per week, and is correct compensation rate of $507.79, which is $35.52 per week. N.C. Gen. Stat. §§ 97-2(5);97-29.
8. As the result of his 4 March 2006 injury by accident and related and aggravated conditions, plaintiff is entitled have defendants pay for all related medical expenses incurred or to be incurred, subject to the provisions of N.C. Gen. Stat. § 97-25.1, including expenses associated with the treatment provided and recommended by Dr. Hines, John Levis, P.A., Dr. Susan Nikrooz, Dr. Foulks, Dr. Mitchell, Dr. Dunn, and Dr. Curling, when the medical bills have been approved according to established Industrial Commission procedures. N.C. Gen. Stat. §§ 97-25;97-25.1. *Page 16 
9. Because defendants' defense of this claim was unreasonable and based on stubborn, unfounded litigiousness, plaintiff is entitled to an award of attorney's fees as a sanction based upon a percentage of the ongoing and past due indemnity compensation payable herein. N.C. Gen. Stat. § 97-88.1. Troutman v. White Simpson, Inc. 121 N.C. App. 48, 464
S.E.2d 481 (1995). This attorney's fee shall not be deducted from the amounts due plaintiff, but instead shall be paid to counsel for plaintiff in addition to those amounts.
 * * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission makes the following:
 AWARD
1. Defendants shall pay to plaintiff ongoing total disability compensation at the rate of $507.79 per week for the period of September 2006 through the present and continuing until such time as he returns to work, or further Order of the Commission. From the amounts having accrued, this compensation shall be paid to plaintiff in a lump sum.
2. Due to the incorrect calculation of plaintiff's compensation rate prior to this Opinion and Award, defendants shall pay to plaintiff the difference between what he was paid, $472.27 per week of total disability compensation prior to this Opinion and Award, and the correct compensation rate of $507.79, which is $35.52 per week. Having accrued, this compensation shall be paid to plaintiff in a lump sum.
3. Defendants shall pay for all related medical expenses incurred or to be incurred by plaintiff as the result of his 4 March 2006 injury by accident and related and aggravated conditions, subject to the provisions of N.C. Gen. Stat. § 97-25.1, including expenses associated with the treatment provided and recommended by Dr. Hines, John Levis, P.A., Dr. Susan *Page 17 
Nikrooz, Dr. Foulks, Dr. Mitchell, Dr. Dunn, and Dr. Curling, when the medical bills have been approved according to established Industrial Commission procedures.
4. As a sanction pursuant to N.C. Gen. Stat. § 97-88.1, an attorney's fee equaling twenty-five percent (25%) of the ongoing and past due indemnity compensation awarded to plaintiff herein is approved for counsel for plaintiff to be paid by defendants. This is to be paid by defendants in addition to the amount the ongoing and past due indemnity compensation owed to plaintiff. The sanction and fee based upon the accrued portion of benefits owed to plaintiff shall be paid to counsel for plaintiff in a lump sum, with counsel for plaintiff receiving thereafter a monthly check equal to twenty-five percent (25%) of the ongoing and past due indemnity compensation being paid to plaintiff.
5. Defendants shall pay the costs
This the 7th day of May 2009.
S/___________________ STACI T. MEYER COMMISSIONER
CONCURRING:
 S/___________________ DIANNE C. SELLERS COMMISSIONER
 S/___________________ DANNY L. McDONALD COMMISSIONER *Page 1